Good morning. This is Judge Gould and I'm the presiding judge today. I welcome everyone to our virtual courtroom here. Judges Kristen and Judge Bress, can you hear me? I can hear you. Yes, Judge Gould. Great. And Counselor, you can hear us? Yes, Your Honor. Thank you. Okay, so now for the first case to be argued, which in fact is the only case that will be argued today, there are two consolidated cases, United States v. Wetselaar and United States v. Litwin that were consolidated for argument. And this is set for 20 minutes per side. As I understand it, the two appellants are splitting their time. So they'll have 10 minutes for each side, for each party. And if they want to reserve some time for rebuttal, then they should stop before the full 10 minutes has run down. So without further ado, I think the first counsel, do we? I want to make sure I've got everyone on the line. We have Counselor Daniel Hill arguing first for Wetselaar? Yes, Your Honor. Okay, and then also, although not visible to me right now, I understand that we have counsel for Mr. Litwin, appellant Litwin, Lisa Rasmussen? Yes, Your Honor. Can we hear you? Yes, I can hear you perfectly. Okay. And also I want to thank counsel and my colleagues on the bench for their cooperation with what is necessarily somewhat of an experiment caused by the current crisis. And also I should have on the system on the line now the counsel for the United States, William Reed? Present, Your Honor. Great. Okay. Well, again, without further ado, we'll start with the appellant Wetselaar's argument by Mr. Hill. And by the way, although the case is set for 10 minutes per appellant and 20 minutes per side, if judges have questions and they want to take more time, or if counsel just, you know, desperately need another minute or two, I'll be a softy and I'll get it. Okay, let's go forward with Mr. Hill, please. And good morning, Your Honors. May it please the court, my name is Daniel Hill. I represent Dr. Henry Wetselaar on this matter. We have received a communication from the court indicating that they wished counsel to focus oral argument on the juror discharge issue. And I am one to abide by the court's unlimiting instructions. That was Ms. Rasmussen's issue in the joint briefing. So with that, I will cede my time for the time being over to Ms. Rasmussen to argue that juror discharge issue in accordance with the court's minute order. Okay, thank you, Mr. Hill. And then do you want Ms. Rasmussen to take the lead here? Yes, please, Your Honor. Yes, okay, that's fine. Could the clerk please shift to a clock for Ms. Rasmussen that's got the full 10 minutes? Okay, Ms. Rasmussen, please proceed. Slight delay while we get her unmuted, sorry, Judge. Can you hear me? I'm hearing background noise. Oh, I can hear you, and also I can see your picture. Great, okay, all right, I'll just proceed then. So the court had kind of narrowed us to focus on the juror dismissal issue, and that was the issue that I briefed, which is why we thought it better to switch this up a little. So what happened in this case was a trial that started in January and then was sent to the jury for deliberation on March 22, 2017. And, you know, when I was looking at the timing of this in prepping for oral argument today, I noticed how little time they had actually spent deliberating. So the jurors retired to begin deliberation at about 9.45 in the morning, it looks like. And then at 12.06 that same day, less than three hours later, they had a request for clarification on a question pertaining to some of the evidence. And they were given an answer to that. They were sent out at 12.11 p.m. And then at 12.20 they came back with another question. They were given an answer. They were sent out again at 12.23. And then at 12.61 they said that they had an issue. And that was where we first began to see that there's an issue with a juror who, quote-unquote, according to another juror, was refusing to deliberate. There was a hearing that was held by the district court. At this point, everyone appeared in person. I think the other jury question issues had been handled by phone. Everyone showed up at about 1 o'clock. And at 2 o'clock, the court had dismissed the juror and replaced juror number five with an alternate. So the manner in which the court did this, and this is what we alleged in the brief, was in insufficient inquiry. It was done with leading questions to arrive at a conclusion that the juror needed to be replaced because she was refusing to deliberate. But that's not actually what happened. She wanted to clarify and to provide context to her responses to the court. And the district court didn't allow her the opportunity to clarify and provide context to those responses. Counsel? Counsel? Yes. I just want to ask one question before you go on, because I've also spent some time on this timeline. I think it's important for foundation. The trial spanned several weeks, as you've described. But, of course, it was also short in trial days. And I was trying to figure out how much evidence, because they only deliberated, as you indicated, that morning. But it looks to me like, all else being equal, it would have been about a two-week trial. Is that a fair assessment? Well, I think that this was, I believe, days 34 or 35 of trial, when they finally sent it to the jury and they were doing half days. So I had kind of thought it was more like a three- to four-week trial. Excuse me. Were they running all five days of the week? I don't know the answer to that, because I wasn't trial counsel. Okay. Sorry. So, yeah, I don't know the answer. So I just assumed when I had 35 and I halved it. Yeah. So, at any rate, I think that the inquiry was particularly geared toward a solution and an outcome rather than open-ended. The jurors, there were a couple jurors that were brought in, as you can see from the record, who were asked pointed questions. The foreman, in particular, seemed to believe that they could reach a verdict if they didn't have this one juror. But that's not the way we do it, and that's not the standard, and the case law doesn't support that kind of activism, I would say. So, and under this court's precedent, and it's admittedly a tricky task because you can't ask what's going on in the deliberations, but the questioning and the way it happens in this case didn't lead to any meaningful inquiry as to whether or not there was a legitimate basis to send them back for further deliberation. There was no even consideration of giving an Allen charge or anything else. The decision, as this court knows from its own precedent, to excuse a juror is within the court's discretion, but the court commits clear error where it doesn't make an adequate inquiry. And I think that in this case, the court didn't make an adequate inquiry. The court made an appointed inquiry with leading questions, interviewed two people, then brought the person in, and then supplemented in the record statements from the court's prior observations that had never been in the record before. There was some communication that the district court discussed that the court had with, or that the juror had with a court staff, but that had never been in the record prior to this day, and in all, it appears from what occurred that, I mean, frankly, they replaced the juror with an alternate and then still ended up hung on several counts. So when this kind of error occurs, we don't know. We can't ascertain the damage to the process, to the right to a fair and impartial jury, and we can't ascertain the harm to my client, Mr. Litwin, or to Mr. Hill's client, Dr. Wetzlar. And that's why this case should be reversed. This is an improper entrance into the deliberations of a juror by a court with a jury just hours in, literally hours in to a trial that had started several months earlier. And even if it had run on a full-time schedule, this would have been a trial that had spanned at least two weeks, more like three. And I understand the district court's interest in getting this case complete. This case had taken several years in getting to the trial. It had obviously spanned several months because of Dr. Wetzlar's age and health, and they were doing half-day trial. But to decide within three hours of the deliberation process to remove a juror because the foreman of the juror thought that she wasn't playing ball well seems wholly inappropriate in this case. I didn't ask when I started if I could reserve some of my time since the court has narrowed the argument for us in this case. You may reserve as much time as you want. Okay. So I'd like to just reserve five minutes. If the court has other questions, I'd be happy to answer them. I thought it was really important to focus on the timeline and how this played out in court. But otherwise, I would turn it over to the government if the court doesn't have questions of me on this particular issue. Well, let me say, we'll give you extra time so you can make a five-minute rebuttal argument after the government has spoken. But I have one question you might want to think about, and that is if we were to assume for sake of discussion here that there was an error in the way that district court handled excusing juror number five, then is it a structural error or is it an error that's subject to harmless error analysis? And what's your take on that issue? But having posed the question, it gives you something to think about before your rebuttal. Thank you, Judge Gold. Okay, thank you. Judge Press, do you have questions now? Because I think I have a few, but I don't want to... I do not, Judge Kristen. Okay. I have a question, counsel, and it's one I'll ask for both lawyers. So I'll do the same thing Judge Gould did, which is pose a couple of questions now for you to think about. You mentioned juror eight, who I guess is the four personnel, but I wasn't sure of that. And you referred to the comments juror eight made. I think there's a slight discrepancy, by my reading of the record, between how juror eight described things and how juror 10 described things. So maybe you could both refer to this. Juror eight was the first one to speak, and he said that she made this declaratory statement as soon as they sat down, but upon further inquiry said it was as the evidence started to roll in and they started to debate. Juror 10 did not say that. Juror 10 said it was as soon as they sat down. So I'd like both of you to perhaps address that discrepancy. And then the related question is that the trial court made a finding that juror five does not genuinely disagree with her fellow jurors. And so my question is, given that she did confirm the three declaratory statements, why is that not adequate support for the court finding? Thank you. Okay. Judge Kristin, did you want her to answer now? No, I thought I would do what you did. Those are my questions for both lawyers, and then perhaps counsel would like to be thinking about that when she comes back. I don't care when she answers it, but I wanted to make sure she and the government both had an opportunity to speak to those points. Okay, thank you, Judge Kristin. If there's no other question right now for Ms. Rasmussen from Judge Grass, we can proceed to Ms. Lutzer. Counsel Rasmussen was representing Litwin. I think we could proceed to Mr. Hill who's arguing for Wetzlar. Okay. By the way, I have a question for the IT people if they're on the line or listening. On the left side of my screen where I see Judge Grass and Mr. Hill now, there's a faint outline of a keypad that I can see through, or a telephone pad. I can see through it so I can see everyone's argument, but is there any way to get rid of that? Do we have IT people on the line? Yeah, we're here. Judge, I think the mouse has moved over. Okay, now we fixed it. I appreciate the answer. Okay, we'll proceed, please, with Mr. Hill. And good morning, Your Honor. Is my screen and audio working all right? Yes, we can see your smiling face under all these trying circumstances. We can hear you very well. Well, I'm an Irish optimist, Your Honor. Thank you. The largest issue that I handled, Your Honors, was the searches and seizures of both the safety deposit boxes and the wholesale seizure of all of the medical files in Dr. Wetzlar and Mr. Litwin's medical practice. Certainly before I launched into it, as I mentioned earlier, the parties were advised to focus their argument on the juror discharge issue. My analysis was that the more pressing of the two was the wholesale seizure of the medical files from the office. So I guess I'll start by asking if any of the judges have any specific questions. I know certainly in their review of the briefing must have determined the juror discharge issue was the most important. If there aren't any specific questions, I'll kind of discuss the Temura analysis as regards the wholesale seizure of all the medical files. That sounds fine to me, and I have my particular questions, but I do want to make sure that you're getting time to argue all the issues you think need to be addressed. And also because we're giving your colleague, Ms. Rasmussen, an extra five minutes for rebuttal, you can not worry if you want to use all your direct time. We'll give you five minutes for rebuttal. Very good, Your Honors, and thank you, Your Honor. I appreciate that. I certainly know and appreciate the court's concern with the juror discharge issue. We have a remarkable, close set of facts here to this court's Temura case, which in the comprehensive drug testing case, this court referred to it as venerable precedent in terms of how to search and seize large and potentially unmanageable amounts of data. So both in this case and in the Temura case, we have an office, the search and seizure is executed, and in the Temura case they end up taking just all of the files within the relevant time period. Here, they went one step further. Although the warrant limited the search and seizure files at the medical office to files pertaining to the subscription of controlled substances, they seized not just any limited set of files, but every single file in the medical practice. Now, naturally, this court is aware that in Temura that search wasn't suppressed. Although the case law supports the suppression of all evidence seized in excess of a warrant, as was the case here. I think it's undisputed that files were seized in excess of the warrant here. There was a couple of differences, though. Number one, Temura set forth this precedent. This court said in Temura this is a close case. They took all of the files. They said it's a close case, but they advised in the future, and I think that's what the government is missing is the advisory nature of Temura. We fast forward, so that's difference number one. Temura didn't exist when the Temura search was executed, and now we have this line of cases. Most recently we can look at the comprehensive drug testing case where the magistrate judge there was advised by the government that there was going to be data in excess of that for which was supported by probable cause seized in the search. But citing specifically to Temura, the government asked the magistrate to set forth guidelines, both seizure guidelines, how to store all of the information. They set up a tanked team in the actual search warrant. In other words, who's going to review the data in excess of the probable cause materials, how fast is it going to be returned, and all of these sorts of guidelines that Temura pretty strongly suggested should be the case going forward where we have a search and seizure for materials in excess of that supported by probable cause. So I think that's difference number one. It seems like a difficult argument, though, doesn't it? I mean, Temura talks about the search being motivated by practicality and not by phishing, and here the agents went to the medical office. Dr. Westler was there and told them this warrant covered most of the material, and I think there's not really a dispute that it actually did. And so it seems like a fairly extreme remedy to just suppress absolutely everything that was taken from the office under our case law. Well, I think ultimately, Your Honor, it was about 20% of the files ended up being covered, and I think what I'm asking the court to consider is the reason they called it, one of the reasons I think it was a close call on Temura is because these guidelines hadn't been set forth. Where is the 20% point? Where does that come from? I am going to... So in terms of at the suppression hearing, the number of files that were returned, if I may, and I apologize, Your Honors. Counsel, maybe while you're doing that, if I could clarify, to follow up on Judge Barresa's question, my understanding is the warrant covered all of the patient files that had prescription medication and that when he was told that, your client said then, we're going to take just about everything. Have I got that wrong? You are correct, Your Honor. Okay, well, maybe you want to answer Judge Barresa's question, because even if it ultimately turned out to be only 20%, which was not my understanding from the record, so if you've got that other information, I'd be interested in it. But at the time, of course, that's 20-20 hindsight, and at the time, I think the officers were told by your client just about all the files had prescription in them. So why was there wrongdoing that would warrant suppression here? Very good, Your Honor, and thank you. I'll address first the initial question. It was on page 22 of the opening brief or volume 36 of the excerpts of record at 6515. The government retained only 238 medical files, and they had seized two SUVs worth around 1,000 files. So that's where that 20%, that roughly 20% number. So the government only retained 238 files out of the approximate 1,000 files. Isn't that another issue? I'm sorry, Judge Barresa. I'm sorry, Judge Barresa. Go right ahead. We may be saying the same thing. I think that's a – isn't that a different question? I mean, that's talking about the percentage of files that was retained. The issue here was the percentage of files that was covered by the warrants. I thought that even at the hearing on this below, the delta between your clients and the government on that question was not really that great. It was something like 75% to 90% was covered. So whether they retained it or not doesn't really speak to the question. Well, I suppose I was drawing one inference there, that being that the government would retain the probative files. In other words, perhaps the inference I was drawing was, yes, that if they're going to retain files to use in intrusive evidence, those would be the ones responsive to the warrant. But I suppose to the greater question, even – I mean, I understand it could potentially be a question of degree, but even one file in excess of those listed in the warrant would be a search and seizure in excess. I anticipated the court's question about certainly my client saying, as is established in the record below, you're going to have to take all of them. And I understand that, but that still – that alone does not expand the perimeters of the warrant. In other words, I don't know that that could be categorized as consent. If he's presented with a warrant and they're saying, here's what we're here to take, and he says, well, then I guess if that's what your warrant says, you're going to have to take almost all of them. When it turns out, at the end of the day, I mean, was it nerves or was it what? Who knows? But that wasn't the case. There were file Cs not contemplated by the warrant. Judge Gould, if I could interject, please, for a moment. One of the questions on my mind, and you can answer it now or when you do rebuttal, is if I assume that the file Cs went beyond the warrant and that there was an error in that regard, what is the prejudice to your client caused by that? And I'll address that in just a couple of minutes on rebuttal, if I may, Your Honor. That's fine. Thank you. Thank you, Your Honor. Okay. Then I think Mr. Hill has concluded for now, and now we'll hear from the United States Counsel, Mr. Reed. And Mr. Reed, although this was set with 20 minutes per side, I want to say that because we are giving some extra time to the appellants for rebuttal, that if you need more than 20 minutes for your argument, just please tell me how much time you need. Thank you, Your Honor. Good morning. Bill Reed for the United States State Police and Court. A very experienced district court judge who is well aware of this court's legal standards and the issues involved used a cautious approach and a steady hand before dismissing a juror who refused to deliberate. A review, when you read the trial transcript, it shows that the district court acted skillfully and within its discretion. Before asking any questions of jurors, the district court told the parties that it was going to ask questions in an attempt to determine whether this was a genuine disagreement or just a refusal to deliberate. And before the court questioned the juror who altered the note that was provided to the court, the court told the juror that it needed to ask some questions related to whether juror number five was refusing to deliberate or had a genuine disagreement with the weight of the evidence. This juror then told the court that juror number five flat out was refusing to participate in the deliberations. This juror also told the court that juror number five had completely refused to consider the evidence from the outfield. Another juror told the court that juror number five had refused to participate in the deliberations from the moment that they sat down and had also refused to consider anyone else's opinion, statements, or review anything. When questioned, juror number five acknowledged to the court what these jurors had said. Well, I don't think that's correct. I don't think she acknowledged it. She said she was given a statement from the court to the effect of, you won't change your mind no matter what. She acknowledged having made that statement, but I think that was probably the extent of what she acknowledged, wasn't it? Your Honor, this juror was somewhat equivocal, but when the court basically tried to pin her down, and I'm looking at ER Excerpt of Record 1172, I believe it's Volume 5, 1172, the court asked, or according to, I'm paraphrasing, according to your fellow jurors, two of your fellow jurors, and the court said he could call in, the judge said he could call in more if necessary. He made a statement as soon as the jury sat down, after being given a directive to commence deliberations, that no matter what, you would not change your mind if you made that statement. And her statement to the court, her answer to the court was, I did. Now, she did equivocate, but this court has said that it makes no sense to let a clear statement that I did not say that and that I can follow the law to serve as an automatic free pass when the evidence, other evidence, points to the contrary. I would submit that that fits like a glove in this situation where this juror admitted that she, basically from the get-go, from the outset, had refused to participate, consider the evidence, and deliberate as the court had instructed her and the other jurors. Counsel, it doesn't fit like a glove. So, if we could break this down, it's terribly important to the parties, of course, and I appreciate your patience with what will probably sound like a granular analysis, but it is a much briefer inquiry than we typically see. And so, the two jurors, I think you're first speaking of juror number eight, who said, he makes a comment about as soon as we sit down, but then upon inquiry, he says, as the evidence rolled in and we started to debate. Juror number 10, the second juror, described it the way I think you described it, which is, it's a much less ambiguous statement. He just says that she made this statement, the no matter what statement, as soon as they sat down. But, here's my other, well, I actually have several other questions, but in this colloquy that you're referring to, the judge asked, at one point the judge said, asked her whether she remembered being instructed that she has to listen to her fellow jurors, and she responds, I do, and I did. And then, at another point, the judge said, I directed you to deliberate toward a verdict, and she said, I am willing to do that, in fact, I have done that. So, the difficulty I have to cut to the chase is that a juror who says, I'm not going to change my mind no matter what, if that's all we had, and admittedly, I think she agreed, she said it three times, but that could be consistent with saying, I have a different view of the evidence, as opposed to saying, I'm not going to listen to the evidence or listen to my fellow jurors. So, I just, in fairness, I really want you to have a chance to go to that point. Why should we not construe her statement as consistent with a juror who has a different view of the evidence? Well, first, Your Honor, the other jurors both told the court that this juror, one of them was more direct than the other, had refused to consider the evidence from the outset, and there's nothing in the record to show that their credibility was, that there was anything that affected their credibility with the district court. This juror, she equivocated, she did make statements that, I can and I have, but she also acknowledged when the court asked her directly, did you make the statement that you will not consider the evidence and that you refused to deliberate with, I'm paraphrasing, with the other jurors. That's an important difference. Where does she ever say, I won't consider the evidence? I think she says that no matter what statement. I don't think she ever says, I won't consider the evidence, does she? Because that's a big difference. Do you have that statement in the record? I think Your Honor is correct. She didn't say to the court directly, I won't consider the evidence. The other jurors made that statement to the court, and the district court is entitled to make credibility determinations involving those other two jurors. And with respect to what this juror had said, if I could just find it where she said, that she, was, that she had not, that she, as soon as, she acknowledged to the court that as soon as the other jurors sat down, that she had told them she was not willing to change her mind. That is tantamount to telling them that she is, that's tantamount to refuse to deliberate in this case. And the court was entitled to make such a finding. Can I ask you, Counselor, how do you deal with the aspect of the colloquy with Juror 8? Because the judge's questioning there was a little more expansive, and at one point Juror 8 said, she's just confused about one part of the jury instruction. We have tried multiple angles. We tried to explain it to her and read it to her several times. That makes it sound like there's some disagreement about the substance of the case, and it also makes it sound like there was some amount of deliberation that occurred. So I guess, I'd like to hear your answer to that part of the questioning, which I think is somewhat troubling for your position. Thank you, Robert. This area is a minefield for a district court, but the court was in a difficult situation because the standards that apply in the court was very aware of them. If you ask, if you intrude too much, then it's an automatic reversal because the court's elicited information that it's not entitled to have about where the jurors stand respectively on the merits of the case. And I would submit that the answer to that question, if the court had tried to follow up on asking what was the problem with the jury instruction, it was going to open Pandora's box about how that might apply to the evidence and what the jurors had been discussing. The court had to very skillfully navigate around what's going on behind those jury-driven doors. I think you make a fair point about why the district court judge may not want to follow up further. I understand the point you're making, but we do, regardless of that point, we do have these statements about the jury instruction. There was some discussion about this jury instruction, disagreement over the jury instruction, and typically when there's disagreement over the meaning of a jury instruction, it's in the context of the evidence presented. So regardless of whether the district court should have followed up further, and I take your point on why he may have reasonably decided not to, we still have this. I'm trying to figure out what was the basis of the disagreement here, and this seems like a disagreement on the merits of the case. I would respectfully disagree, Your Honor, but I find that when it comes to a matter involving a jury instruction, it's more of a matter of the law, and here we have to speculate. If more evidence that the juror, more likely than not, was refusing to follow the court's instructions, which we don't know exactly where they may have been, but it may have been the admonition that jurors are required to consider the evidence with other jurors and discuss it and work towards a collective decision and deliberate. But I don't think that, I would respectfully disagree that it shows that there was deliberation. I would suggest that, again, it requires speculation. It's much a matter of law, and this juror's unwillingness to follow the law, and the court, here the district court, may act within its discretion, but it made such a fine effort engaging in this limited dialogue, albeit a dialogue with two jurors who told the court that after a very short amount of time, only approximately three hours that the jury had been considering the case, the instructions, after 35 days of testimony, is an objective fact that this court can consider in determining whether or not this was a refusal to deliberate versus a genuine disagreement as to the merits of the case. Can I ask you a question about another aspect of the district court's ruling, which is that this, the apparent finding that the juror had an axe to grind with the court or was maybe motivated by some potential malice to the court having been put on the jury when it was not convenient when she had asked to be taken off the jury. Is the government defending that aspect of the district court's decision? Your Honor, I think that that is yes. I would say that that was certainly part of the overall credibility assessment at the district court that the court is entrusted to make in these types of situations. Is that the factor that drives the ultimate decision? That is a totality, I would submit. And here the court just is in an abundance of caution and has the presence of mind to recollect the difficulties and perhaps the motivation for why this juror, but it's some speculation, but it's part of the totality of the circumstances that the district court was entitled to rely upon in making this credibility determination about this juror's willingness to participate in the deliberations with other jurors. Bill, is that schooled? I can interject a question, please. Before you conclude your argument, I would appreciate hearing what your view is on the same question I posed to Ms. Rasmussen, that is, assuming that the court were to determine that it was an error of some sort to remove juror number five as it was done, assuming that without deciding that, what's the standard that we apply? Is it a structural error that requires automatic retrial, or do we consider some sort of harmless error standard? Your Honor, I would respectfully suggest that tailored to my argument, there was no error, but if the court were to find error, a harmless error, here the evidence is the jury had only begun, only been sent back to discuss the case for a very limited amount of time. The jury was reconstituted the next day with a new, the ultimate juror. Again, the district court, I would submit, very carefully followed this court's admonitions about when it encounters this type of problem, it shows the skill which the court handled the problem. It's a very, it's a minefield for a district court, and the district court, I would submit, handled it appropriately, and it wasn't an error, but if the court were to find error, it suggests harmless error. When we address if there was an error, am I correct that the standard for reviewing this issue is abuse of discretion? Yes, that is correct, Your Honor. I believe in both the Semington case and the Christensen case cited in the government's brief, and I believe the appellate's brief, that I don't believe there's any abuse of discretion is the standard of review. Okay, thank you, counsel. Counsel, just a couple of follow-up questions, if I could. My understanding is that Dr. Wetzler and Mr. Litwin were convicted on all counts, right? And the jury just hung eyes to the third defendant, is that right? Or did not convict, I should say, that's all I really care about. Didn't convict as to the third, Smith, is that right? That's not exactly correct, Your Honor. Mr. Litwin was actually acquitted of one of the substantive, controlled substance counts, and he was acquitted of the three, I believe there were three counts of making false statements and he was acquitted of those. I do have that, thank you for the correction. Thank you for the correction. I appreciate that. My other follow-up has to do with the foreperson who was ultimately juror number seven, but at this point in the transcript he's juror number eight, and I think that's because the numbers shifted by one after the juror number five was excused, is that right? I'm not, Your Honor, I'm not exactly certain who, I'm sure there was a shifting of numbers, but I don't know if he became the foreperson or not. He certainly acted in that de facto capacity as the author of the note. Okay. I would have to check the record closely. That's fine, I think that's what happened, which is why he appears first as juror number eight. It may not be important, but I noticed the discrepancy. I think he actually was the foreperson, it's just that by the time he got to the verdict he's number seven so I'll confirm that. I also wanted to give you a chance to respond to a statement that I found interesting. It's one of the judge's findings. He said, she's a paralegal with several, referring to juror number five, she's a paralegal with several years experience and given an opportunity to explain she would probably hang her hat on some point. She's savvy enough to do that. I looked at that finding and there's a couple places in the transcript where she uses the word context. She wants to give the judge context for the no matter what statement. I don't think she's allowed to do that. I mean, I just don't think she's allowed to finish her sentence. Should that cause me concern? No, Your Honor, because this very experienced district court judge has handled many trials with the answer to that, he had situational awareness that the answer to that was going to perhaps cause error no matter what, and that context being what the jurors may or may not have been discussing that might lead to the court, divulging to the court, the jurors, the merits of the case to the court. Yes, Your Honor. I'm sorry. My screen went black for a minute. When we moved the mouse, you all came back, so sorry for that. Anyway, I think you're saying that, I think the answer to my question is that you think he, in context of what the judge is saying is that he's trying not to delve into the jury's deliberations. Is that your assessment? Exactly, Your Honor. Yes, Your Honor. All right. Thank you. Unless there are any additional questions, I see I have 20 or 23 seconds. I'll be taking any questions. Counsel, Judge Gould, to interject. Although I, you have just a small amount of seconds left. As I said earlier, I was giving the, giving extra time to your colleagues on the other side of the case, Ms. Rasmussen and Mr. Hill, so that if you want another five minutes of opposition or argument, you can certainly have any time up to that now. Thank you, Your Honor. The only, the only thing I would ask the court if there are any questions, I know the search was addressed by Mr. Hill in his argument, and unless the court, if the court had any questions of me about the search, I'd be happy to try to answer those. Well, I had a question on the search that I posed to Mr. Hill, I think also, that was assuming that the search transcended to Mr. Hill. What's the prejudice? What's the government's view as to whether that would be an error that caused prejudice to to Mr. Wetzlar? Your Honor, there would be no prejudice here. This was a, for lack of a better term, this was a pill mill. This was not a legitimate medical practice. The, Dr. Wetzlar by his own admission to AGIS, the overwhelming majority of these files involved patients who were receiving controlled substance. That was within the parameters of the search warrant, patient files involving controlled substances. And I believe that during the suppression hearing, the unrebutted testimony from I believe she was a Nevada Highway Patrol officer who was on the drug task force. The unrebutted testimony was that 96% of the patient files involved prescribed controlled substances. The government's medical expert, I believe his testimony was that this was not a legitimate medical practice. This did not involve the practice of medicine. In Tamira, which this court did not take the action of suppressing the entire, the extreme action of suppressing all of the evidence. The court found that the government had seized an extraordinary amount of files that went beyond the parameters of the search warrant. That simply is not the case here. And there would have been only a minuscule amount of files that were taken. There was no prejudice I would submit. Okay. Thank you, counsel. Judge Gould, would you mind if I ask one follow-up question? I just want to clarify. I don't mind if judges ask as many questions as they like. Counsel, your brief makes the point several times that there's overwhelming evidence against Gil as to Dr. Wetzler. And I give you that point. I think that we've clarified they convicted him on everything, which is my original understanding. What I'm wrong about, I think, is that I thought they convicted Mr. Litwin of everything and you just clarified that. And I think the only count they hung on really has to do with Smith. So my question is, that indicates they're deliberate. When they came back, how long did it take them to reach a verdict? I think it was a very short period of time. Is that wrong? I believe that that is incorrect, Your Honor. The jury was reconstituted with an alternate juror the following day and around 9 o'clock in the morning or so. And then the jurors came back, reported a verdict just before 4 o'clock in the afternoon. On that same day, correct? On that same day. On the second day. That same day. Yes. Yes, that was my understanding. All right, thank you. Yes. And, Counsel, let me just ask one other follow-up, which I did want to get. I'm not sure you answered or Judge Kristen had asked a question about some of the comments that the district court made about the this particular juror being savvy. She's a paralegal. She knows what she's doing. Maybe you could give us your assessment of those comments. I don't know that you had a chance or directly answered that one and I thought it was a good question from Judge Kristen. I apologize if I didn't answer it more directly. I would just suggest that this is the court more or less making a credibility determination, which it's entitled to do. This court has said over and over again that the district court is in the best position to make credibility determinations about not only witnesses, but jurors and especially individuals such as this one who've been before the court for the better part or over a month. I would suggest that that's part of the credibility. It goes into the totality of the circumstances that supports what we have here, credibility determination about this juror's unwillingness to deliberate with other jurors. What was the basis in your view? What was the basis for those comments? It seems that it would be the district judge's view that the juror had an axe to grind or had this potential malice to the court. I agree, Your Honor, that the court is somewhat speculating but felt that that there might be some underlying problem that contributed to her unwillingness to participate in the deliberations. I don't know that we can make that... I don't know that that was exactly a concrete factual finding but it was evidence that occurred before the court that she had been difficult to see as a juror and had not wanted to participate and I think the court factored that in as a possible basis for her unwillingness to participate in the deliberations but there can be no doubt that the court made a correct factual finding that she did refuse to deliberate with other jurors for whatever reason. It may have been because she had been kept from her employment an inordinate amount of time. I can't answer exactly and I don't think the district court either what her motivation was but it offered this as one potential explanation for why she after being sent back with other jurors completely refused to consider the evidence or discuss the case with the other jurors. Counselor, do we have any published case that finds that there's a support for discharging a juror under these circumstances meaning refusing to deliberate where there hasn't been an alum instruction at least one attempt to send the jury back. Can you think of any case that does that? Your Honor, the best the seminal case that comes to mind is the one in my brief and I believe also in the appellant's brief is the Christensen case and it it just and there this court found that the district court in fact did erroneously discharge a juror because it impermissibly intruded too far into the jurors mindset about where the juror stood on the case and in that case I believe the juror the jury I may be incorrect about whether that's the juror's case. I'm familiar with the case and I've got it. As long as that's your best authority I've got it. Thank you. Thank you, Your Honor. Thank you, Your Honor. I don't hear any unless there were other questions from Judge Christensen or Judge Ress we can let Mr. Breed conclude and we'll proceed to the rebuttal arguments. I didn't know which of the appellants was going to speak on that. Do I assume that Judge Ress that it was probably Ms. Ress? Yes, that's correct. May I proceed? Yes. Okay. So I'm going to try and go back and address some of the questions we talked about earlier. So it's my position that this is structural error and here's why. It doesn't lend itself to harmless error analysis in exactly the same way that a  can't do harmless error analysis. You cannot go back and say how would this proceeding have been different if we had an ex- juror in the Batson context, it's an African-American juror or a minority juror on the trial. It infects the entire proceeding. So it can't be said how long they deliberated after that, did it really matter, would it have made a difference. It doesn't work for harmless error analysis much the same way Batson doesn't work for harmless error analysis or frankly an ineffective assistance of counsel doesn't work for harmless error analysis. You can't parse out certain things and those things where you can't parse them out and go back and do some math and make some analysis are structural error because we can't just isolate them and say well was there still enough evidence. It would require us to guess what a certain juror or a remaining group of jurors would do. I think you might be misunderstanding the import of my question about the timing but let's set that aside for a minute. I appreciate your answer to Judge Gould's question. It's a very important question. What's your strongest support for your position that this is structural error please. That it doesn't lend itself to harmless error analysis because we have to be careful about what we say. I apologize. I was about to ask you the same question. I know the Supreme Court has cautioned us a number of times about when structural error is the correct standard and we have some well defined situations that are structural error but is there any case from the Ninth Circuit for the Supreme Court or indeed any other circuit or published district court opinion stating that dismissing a juror in the circumstances here if improper would be a structural error. I don't have a great answer but I have maybe an answer. I will give you what I have in the limited time I've had to look at this. In the United States it's a hard name and that's at 969F second 757. It appears that in that case the circuit this court has a lengthy discussion as to this kind of issue of replacing a juror being plain error. I know that doesn't get me where I'm trying to go on this but I was looking at different standards and I don't dispute as the government indicated earlier that it's an abusive discretion standard but that doesn't answer our question of structural error but I think when things are reviewable for plain error they are also different. So I give you that and that's the best I have on that at the moment. Can I go on and answer some of the other questions? I think you may. I'll just say on the structural error issue if the panel, if the court feels we need supplemental briefing we'll send it on that. Thank you and I would greatly appreciate that. And Judge Christian, I wasn't trying to suggest that your inquiry about how long after they deliberated was irrelevant. I was just trying to say that when we're analyzing structural error it's like we can't really take apart the components. But I do want to talk about structural error. I know what structural error is. I'm just trying to figure out whether we've ever said that structural error applies here. But I think in response to Judge Gould's question you covered that. Okay. I did want to emphasize and I think the government clarified it. My client was convicted of seven counts. He was acquitted of four counts. Count six, 10, 11, 12. My client is serving a 20-year sentence for this case. He's in his, he's my age, he's in his mid-50s. This is a 20-year sentence. It's a serious case. But he wasn't convicted of everything. And we have no way of knowing what things, I mean, in some of the transcript it says that she's stuck on a sentence and it applies to every count. That's what juror number eight tells us. And going back, because I know we had this question earlier, when we're talking about the initial juror that was questioned, that is juror number eight. But I  jury that was talking, juror eight actually states that he wrote what another juror wanted to put in the jury notes. So there's some other juror inside the deliberation room who instructs juror number eight by dictation to say write this note to the judge. And that's how this issue gets to the judge. So, and I want to say your extra five minutes I gave you has expired. And you're now on a clock going upwards. So you've had six and a half minutes up extra. If you absolutely need another minute, I'll give you that. But you need to bring this to conclusion. Okay. I'll wrap it up. So I think what the issue here is whether or not there's genuine disagreement or refusal to deliberate. There's speculation on the part of the district court that the juror has an axe to grind. Nobody even once sent this back for an Allen charge or sent them back to deliberate. There was no opportunity for juror number five to clarify and provide context and she clearly stated on the record that she was willing to go back in and deliberate. That's why in this case it was error to remove that juror and it's structural error is my position. And I'd be happy to do additional briefing. Thank you very much. Thank you, counsel. We appreciate the argument. Now we have Mr. Hill has five minutes for rebuttal time as well. Is the court able to see and hear me? Yes. We can see you? We can hear you? So I am fully cognizant that I'm sitting second chair in this situation or second violin so I'll only take two minutes of the court's time to impress upon your a couple of issues. First in response to Judge Hould's question I will turn the court's attention to USV Reddick which is in the opening brief. Specifically the line of reasoning on suppression there and this was another instance where there was an outside the scope search and seizure and the court was considering wholesale suppression of everything that was seized. The court reasoned the agents did not confine their search to the objects of the warrant and therefore all evidence seized during the search must be suppressed. Which is another way of saying if the search exceeds the scope of the warrant under that analysis and it's unreasonable which I think is  of the analysis. If we're searching outside the scope of the warrant it tends to be unreasonable but I think that's the end of the analysis in terms of prejudices or no prejudice. If the execution of the warrant converts it to a general warrant I think that's the end of the analysis in terms of whether or not it's going to be suppressed. The second Do you have a case that says that? I do. Because I've never improper search cases to be structural error. So I think the case that most supports that position in terms of that's the analysis this court follows would be Reddick which is in the opening brief and the pinpoint site on that is going to be page 423. Did that Reddick case say that it is a structural error? It did not your honor. Not explicitly. So what it said was because the evidence was seized in what was essentially a general warrant they disregarded the scope of the warrant. There was a and there wasn't I mean they looked at the good faith of the officers. That was one of the things they looked at there. But in deciding there was none they said because there was no justification for how they did it there that's what led to the wholesale suppression which leads me to the second point that I wanted to emphasize which is that under cover officers had been in Dr. Wetzlar's office and they were well aware of the state of the files, the number of the files. They knew what was up in that office and this court set forth very ingenious and simple guidelines on how  take every file and what was under those conditions which would be simply if you know you will need to take every file ask the magistrate and if you are on scene and you come to learn you may have to take every file stop and either go back to the neutral magistrate or you have to sort them right there on scene. He said it would have taken 10 hours. Otherwise what they did was took every single file and kept them for half a year. So I think what makes this court different from Tamora is we now have that precedent. If you are going to seize everything and it wasn't in any and all files in the medical practice the warrant specified what kind of files were going to be taken. I don't think it's disputed however that they seized files in excess of that warrant. It's not like there wasn't anything they could do. For decades now this court has advised make sure your warrant covers those kinds of possibilities up front or stop your search for a little bit and go back to the neutral magistrate and ask for permission to convert. You can't go to the client and assign whatever and use his words to expand a warrant. I think that's why this court has put forth a schema in Tamora for this very reason. I think there was something that was said in Tamora and I think that's what this court has said. I don't think that this court has said that there is no way that this court can   I think that this court has concluded arguments of all three counsel and appreciate the fact that all of you have cooperated with the court in its remote argument needs caused by the court itself. Thank you. I will end our argument calendar today. This court for this session stands adjourned.
judges: Gould, Christen, Bress